RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0305p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RONRICO SIMMONS, JR.,

>
> *Petitioner-Appellant,*
>
> *v.*
>
> UNITED STATES OF AMERICA,
>
> *Respondent-Appellee.*

No. 19-1757

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
Nos. 1:14-cr-20628; 1:18-cv-12557—Thomas L. Ludington, District Judge.

Argued: August 5, 2020

Decided and Filed: September 11, 2020

Before: ROGERS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jo-Ann Tamila Sagar, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant. Patricia Gaedeke, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Jo-Ann Tamila Sagar, Neal Kumar Katyal, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant. Patricia Gaedeke, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

NALBANDIAN, Circuit Judge. Deadlines matter, especially in habeas cases. So we require good excuses to overcome them. One valid excuse is when the government itself creates an unconstitutional impediment to a prisoner's timely filing of a motion to vacate his sentence

under 28 U.S.C. § 2255.  That is what RonRico Simmons argues happened to him here.  But he fails to allege facts that would establish that the supposed impediment to his late filing actually prevented him from filing earlier.  Without a valid excuse, he filed his § 2255 motion too late.  We **AFFIRM**.

I.

RonRico Simmons, Jr. pleaded guilty to:  (1) "conspiring to possess with intent to distribute and to distribute a substance containing heroin . . . in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)," and (2) "caus[ing] others to use a house to use, store[,] and distribute controlled substances," in violation of 21 U.S.C. § 856(a)(1) and contrary to 18 U.S.C. § 2.  (R. 37, Plea Agreement, PageID 140–41.)  On September 8, 2016, the district judge entered judgment against Simmons.  Simmons did not file a notice of appeal.  Almost two years later on August 13, 2018, Simmons moved to vacate his sentence under § 2255.  On the same day he also moved to grant timeliness of his 28 U.S.C. § 2255 motion under Section 2255(f)(2).

Under Section 2255(f), the limitation period for moving to vacate begins to run on the latest of four dates.  28 U.S.C. § 2255(f).  Subsection one usually governs, meaning Simmons had one year after his conviction became final to file his motion to vacate.  *Id*. § 2255(f)(1).  The parties do not dispute the district court's finding that Simmons's judgment became final on September 22, 2016, his deadline to appeal (fourteen days after the district court entered judgment).  So he had one year after that—until September 22, 2017—to file his motion to vacate.  But he did not file until August 13, 2018.  So Section 2255(f)(1) would ordinarily bar Simmons's motion.

Recognizing this, Simmons tried to rely on Section 2255(f)(2).  That section says "[t]he limitation period shall run from . . . the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action[.]"  28 U.S.C. § 2255(f), (f)(2).  Simmons explained that, after his sentencing in 2016, he returned to state custody to finish serving state time.  He was in Michigan Department of Corrections

(MDOC) custody until December 2016 and served time at Wayne County Jail for about nine months after that.

Simmons claimed that the law libraries in "MDOC custody" and at Wayne County Jail did not have federal law materials.  In his motion to grant timeliness he generally said he "had no access to a legal library; 2255 Petition; his legal materials or the Rules Governing 2255 Proceedings[.]"  (R. 44, Mot. to Grant Timeliness, PageID 215.)  But later in this motion he specified that he "had no access to [a] federal law library; legal materials; assistance by prison authorities in the preparation and filing of meaningful legal papers; and no access to the Rules Governing 2255 Proceedings and AEPDA [sic] statute of limitations[.]"  (*Id.* at 217.)  According to him, these inadequacies served as an impediment in violation of the Constitution that "prevented him from having the ability to timely pursue and know the timeliness for filing a 2255 Motion[.]"  (*Id.*)  He claims he did not gain access to these resources until September 27, 2017 when he entered federal Bureau of Prisons (BOP) custody.  Thus, the statute of limitations did not start to run until Simmons had access to those resources that facilitated his ability to file a Section 2255 motion.  And because he filed within a year of gaining such access (on August 13, 2018), his motion was timely.

In reply to the government's opposition to his motion, Simmons again explained that he lacked access to "some of his legal materials" or any federal law until September 27, 2017, when he entered federal custody.  But he also admitted (after the government pointed it out) that he arrived at a federal facility—Federal Detention Center (FDC) Milan—on August 29, 2017.  He said the court should hold an evidentiary hearing to assess the timeliness of his filing.

Simmons attached affidavits from himself and Benjamin Foreman, the jailhouse law clerk helping him with his post-conviction relief.  In his affidavit, Simmons said: "While at the Wayne County Jail, I merely had access to state law, however as the result of me being convicted in federal court state law was of no benefit to me."  (R. 52, Reply, PageID 325.)  He mentioned nothing about his time in MDOC custody before January 2017.  He said FDC Milan (where he arrived on August 29, 2017) only had a library computer, with no physical library or legal assistants to help.  The lack of guidance "made it rough [for him] to *begin* legal research not having 'any idea' where to start."  (*Id.* (emphasis added).)  He again emphasized that he "did not

have the opportunity and access to a federal Law Library and assistance until September 27, 2017[.]" (*Id.*)

In Benjamin Foreman's affidavit, he explained that he had been a law clerk at prisons for years and that:

> [V]ery few guys could navigate themselves through the Law Library system without the guidance of me or our other Law Clerk Mr. Bennett so, I can totally understand how Movant Simmons, Jr. *waited til he arrived* at FCI-Milan to seek the aid of an experienced Law Clerk to help him.

(*Id.* at 327 (emphasis added).) Foreman also explained that the only way to obtain Section 2255 materials while at FDC Milan was to request them from the law library technician, but "you have to know what you need." (*Id.*) Simmons requested nothing since he "knows nothing at all about federal law and how to research [and] identify errors." (*Id.*)

And in supplemental briefing, Simmons again asserted that during his time in state custody he "had no access to a law library (with federal case law and ADEPA [sic] statute of limitations period); 2255 Petition; his legal materials or the Rules Governing 2255 Proceedings[.]" (R. 60, Suppl. Br., PageID 366.) He had "'no federal law' or 'federal forms'" and no "computer that accesses federal law cases." (*Id.* at 370.) He said he only had access to state law, and no one provided legal assistance.

The magistrate's final report and recommendation recommended denying the motion for timeliness. The district judge adopted the report and recommendation, accepting the magistrate's finding that Simmons's "allegations were broad and generalized, and that he has not sufficiently alleged what specific legal materials he was missing and how the lack of those materials prejudiced his ability to pursue his rights under section 2255." (R. 64, Order, PageID 419.) But the district judge noted the difficulties in deciding this Section 2255(f)(2) issue, especially with the lack of binding precedent. So he issued a certificate of appealability for us to assess: (1) "whether the lack of access to legal materials can support relief under 2255(f)(2)" and (2) "how specific a petitioner must be in alleging which legal materials he lacked access to and how that impacted his ability to pursue his rights under section 2255." (*Id.* at 419–20.)

II.

The Supreme Court has long recognized a constitutional right of access to courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977). In *Bounds*, the Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. In *Lewis*, the Court clarified that *Bounds* focused on the right of access to courts—*not* a "freestanding right to [an adequate] law library or legal assistance[.]" 518 U.S. at 350–51. What's more, a state need not "enable the prisoner to *discover* grievances, and to *litigate effectively* once in court." *Id.* at 354. The constitutional right to access courts does not impose such additional burdens on state prisons. *Id.* A state need only provide adequate tools for inmates to "attack their sentences, directly or collaterally," or "challenge the conditions of their confinement." *Id.* at 355. *Bounds* and *Lewis*'s emphasis of a right to court access suggests that a lack of federal materials for a prisoner to challenge his conviction or confinement or a lack of a legal assistance program *may* constitute "impediment[s] . . . by governmental action in violation of the Constitution[,]" depending on the other circumstances. 28 U.S.C. § 2255(f)(2); *see id.* § 2244(d)(1)(B).

The circuits that have addressed this question agree that a lack of access to certain legal resources may constitute an impediment under Section 2255(f)(2) or Section 2244(d)(1)(B), the Section 2244 counterpart to Section 2255(f)(2). In *Whalem/Hunt v. Early*, the Ninth Circuit addressed impediments for Section 2244(d)(1)(B). 233 F.3d 1146 (9th Cir. 2000) (en banc) (per curiam); *see Shelton v. United States*, 800 F.3d 292, 294 (6th Cir. 2015) (reading Section 2244(d)(1)(B) and Section 2255(f)(2) as "virtually identical" (quoting *Ramos-Martinez v. United States*, 638 F.3d 315, 321 (1st Cir. 2011))). The court held that there could be "circumstances consistent with [the] petitioner's petition and declaration under which he would be entitled to a finding of an 'impediment' under § 2244(d)(1)(B)." *Id.* at 1148. The petitioner claimed that the law library in his prison did not have a copy of the Antiterrorism and Effective Death Penalty Act (AEDPA)—which established the relevant statute of limitations—until two years after his judgment of conviction became final, and he knew nothing about the AEDPA one-year statute of

limitations. *Id.* at 1147. The district court dismissed the petition as time-barred, but the en banc court reversed and remanded, finding that the petitioner's allegations potentially suggested an impediment. *Id.* at 1147–48.

Similarly, in *Egerton v. Cockrell*, the Fifth Circuit concluded that "[t]he absence of all federal materials from a prison library (without making some alternative arrangements to apprise prisoners of their rights) violates the . . . right . . . [of] access to the courts[,]" and "an inadequate prison law library may constitute a state created [sic] impediment that would toll the AEDPA's one-year limitations period." 334 F.3d 433, 438–39 (5th Cir. 2003). And in *Estremera v. United States*, the Seventh Circuit held that a "[l]ack of library access can, in principle, be an 'impediment' to the filing of a collateral attack." 724 F.3d 773, 776 (7th Cir. 2013). But "[w]hether a prisoner has demonstrated the existence of a state-created impediment is highly fact dependent." *Funk v. Thaler*, 390 F. App'x 409, 410 (5th Cir. 2010) (per curiam). "To hold that the absence of library access may be an 'impediment' in principle is not necessarily to say that lack of access was an impediment for a given prisoner. 'In principle' is a vital qualifier." *Estremera*, 724 F.3d at 777.

The parties do not cite authority from this Circuit establishing that the lack of federal materials in a prison can constitute a constitutional violation, nor have we, apparently, rejected that view either. For purposes of this case, we need not define the contours of such a right. We assume that a lack of federal materials for a prisoner to challenge his conviction or confinement, combined with a lack of a legal assistance program, constituted an unconstitutional impediment under Section 2255(f)(2).

## III.

We next address what the prisoner must allege for Section 2255(f)(2) to apply. We review de novo whether a Section 2255 motion is time-barred. *See Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012) (finding the same in the context of a habeas petition under 28 U.S.C. § 2241).

Typically, a prisoner must file his Section 2255 motion within one year of his conviction's becoming final. By its terms, however, Section 2255(f)(2) effectively creates an

exception to this rule by stating that the one-year period can begin on a later date—when an unconstitutional impediment to filing the motion is removed—provided that "the movant was prevented from making a motion by such governmental action[.]" Thus, under the statute, an unconstitutional impediment is not enough, in and of itself, to delay the triggering of the statute of limitations. A movant must initially allege facts that will establish that the impediment actually prevented the movant from filing the motion.

That the statute requires a causal relationship between the impediment and not filing the motion is not controversial. We have said, in unpublished cases, that Section 2244(d)(1)(B), Section 2255(f)(2)'s counterpart, "requires a causal relationship between the unconstitutional state action and being prevented from filing the petition" and that the *prisoner* must allege the relevant facts. *Winkfield v. Bagley*, 66 F. App'x 578, 582–83 (6th Cir. 2003) (quoting *Dunker v. Bissonnette*, 154 F. Supp. 2d 95, 105 (D. Mass. 2001)); *see also Webb v. United States*, 679 F. App'x 443, 449 (6th Cir. 2017) (finding that a prisoner did not "show a causal relationship" between the governmental action and the prisoner's inability to file a Section 2255 motion on time).

Other circuits have arrived at similar conclusions. In *Krause v. Thaler*, for instance, the Fifth Circuit held that a prisoner "fail[ed] to even allege sufficient facts to show that he was prevented from timely filing" his habeas petition. 637 F.3d 558, 562 (5th Cir. 2011). The prisoner alleged that the library at his facility was inadequate and therefore an impediment to filing under Section 2244(d)(1)(B). *Id.* at 560, 562. But the Fifth Circuit concluded that the prisoner needed to allege more than that. He did "not at any point allege facts as to why the transfer facility's lack of legal materials prevented him from filing a timely habeas application." *Id.* at 561. For example, he did not "allege that he had no knowledge of AEDPA's statute of limitations before he was transferred to the . . . facility which he claims had an adequate library." *Id.*

So to invoke Section 2255(f)(2), it is the prisoner's responsibility to allege (1) the existence of an impediment to his making a motion, (2) governmental action in violation of the Constitution or laws of the United States that created the impediment, and (3) that the impediment prevented the prisoner from filing his motion. *See, e.g.*, *Krause*, 637 F.3d at 560–

61. Thus, Simmons had to allege why his supposed impediment prevented him from filing earlier. In other words, to satisfy Section 2255(f)(2), he had to allege a causal connection between the purportedly inadequate resources at the state facilities and his inability to file his motion on time.

Here, we find that Simmons failed to adequately allege or explain how the supposedly inadequate state law libraries or lack of legal assistance had any bearing on his failure to file while in state custody. All he said in his motion was that he "had no access" to certain legal resources and that this lack of access "prevented him from having the ability to timely pursue and know the timeliness for filing a 2255 Motion[.]" (R. 44, Mot. to Grant Timeliness, PageID 217.) He did not allege any facts connecting the facilities' alleged lack of resources and his failure to file his motion within the normal one-year limitation period. He only provided the bare conclusory statement that the lack of access "prevented him" from filing earlier. But did Simmons try to go to the state library and get materials even once? *See Estremera*, 724 F.3d at 777 (asking whether the prisoner even consulted a library before filing his petition). Did he seek out a legal assistant to help? As the Seventh Circuit pointed out: "If he didn't want or need a law library during the year after his conviction became final, its unavailability (if it was unavailable) would not have been an impediment." *Id.*

Simmons did not, strictly speaking, need to answer any particular question in his allegations, but he needed to allege *something* reflecting a plausible causal connection. We are left with no factual allegations that the supposed impediment prevented him from filing. "Because [Simmons] makes no attempt to explain how the transfer facility's alleged deficiencies caused him to untimely file his [motion], his claim amounts to little more than an incognizable complaint that his prison lacked an adequate library." *Krause*, 637 F.3d at 562 (citing *Lewis*, 518 U.S. at 351). Thus, with only his mere conclusory assertion, Simmons failed to adequately claim that the alleged lack of resources prevented him from filing.[1]

---

[1]Simmons also filed sworn affidavits from himself and his jailhouse law clerk, but those are even less helpful. In his affidavit, Simmons only references Wayne County Jail, not "MDOC custody" at all. So he failed to address whether MDOC custody lacked the same materials. And he mentioned even less in his affidavit about prevention than he did in his motion to grant timeliness. What's more, the affidavit from Foreman, the jailhouse law clerk, does not help Simmons because Foreman said, "I can totally understand how Movant Simmons, Jr. *waited til*

Requiring Simmons to allege facts that would establish the causation between the impediment and his failure to file is not, as he argues, inconsistent with the general legal principle that defendants typically bear the burden to show that a plaintiff's claim is outside a statute of limitations. *See Griffin v. Rogers*, 308 F.3d 647, 652–53 (6th Cir. 2002) (holding that "the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run"). Here, Simmons himself recognized that he had a timeliness problem by raising the issue in his first filing before the government could point out that he had filed his motion late. So he started this case by rebutting a legitimate statute of limitations defense. And this makes sense.

It would be inconsistent with the text of Section 2255(f) and the context of (f)(1) to make the government allege that an impediment did not exist and did not cause an untimely filing. That's because the one-year period will, as a default, be triggered by Section 2255(f)(1). *See Hueso v. Barnhart*, 948 F.3d 324, 335 (6th Cir. 2020) (noting that "the default start date for the limitations period" is "one year after a final judgment"). The "judgment of conviction" referenced in Section 2255(f)(1) is the only event mentioned in Section 2255(f) that will necessarily occur in every case. Thus the government, consistent with general statute of limitations principles, must allege that the motion falls outside of the one-year statute of limitations as triggered by Section 2255(f)(1) (unless the prisoner makes the argument first, as occurred here). *See Griffin*, 308 F.3d at 652–53. The possible, later triggering dates listed in Section 2255(f)(2), (f)(3), and (f)(4) may occur in certain cases or they may not. But forcing the government to make allegations that disprove those dates in every case makes no sense.

---

*he arrived* at FCI-Milan to seek the aid of an experienced Law Clerk to help him." (R. 52, Reply, PageID 327 (emphasis added).) If anything, this comment suggests that the allegedly inadequate state resources were not what prevented Simmons from filing sooner—rather his decision to wait did.

In sum, we hold that a prisoner is at least required to allege a causal connection between the purported constitutional impediment and how the impediment prevented him from filing on time.  Simmons did not.  His conclusory assertion that the lack of access "prevented him" from filing is not enough.[2]

*     *     *

For these reasons, we **AFFIRM**.

---

[2]Because Simmons failed to adequately allege a causal connection, an evidentiary hearing is unnecessary.